UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHARLES MITCHELL, | ) ) ) | |
| Plaintiff, | ) ) ) | |
|  | ) | Civil Action No. 23-CV-11852-AK |
| v. | ) ) ) | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Defendant. | ) ) ) ) | |

**MEMORANDUM AND ORDER ON MOTIONS FOR REVERSING AND AFFIRMING DECISION OF COMMISSIONER**

**ANGEL KELLEY, D.J.**

Claimant Charles Mitchell ("Mitchell") seeks judicial review of the denial of his application for disability insurance benefits dated June 13, 2023, by the Acting Commissioner Kilolo Kijakazi, ("the Commissioner") of the Social Security Administration ("the SSA"). Before this Court are (1) Mitchell's Motion to Reverse the Commissioner's decision [Dkt. 7], arguing the Administrative Law Judge ("ALJ") erred in his October 28, 2022 decision; (2) the Commissioner's Motion to Affirm the ALJ's decision [Dkt. 11]; and (3) the exhaustive administrative record. For the following reasons, Mitchell's Motion to Reverse the Decision of the Commissioner [Dkt. 7] is **DENIED** and the Commissioner's Motion to Affirm the Decision [Dkt. 11] is **GRANTED**.

**I.     BACKGROUND**

Claimant Charles Mitchell was born on May 18, 1971. [Dkt. 6-83 at 2]. He was 37 years old at the time of the alleged onset of his disability. [Dkt. 6-10 at 3]. Mitchell has been diagnosed with multiple medical conditions and has had a long history of medical treatment. He

suffers from degenerative disc disease of the lumbar spine and depressive disorder. [Dkt. 6-77 at 15]. These impairments limit his ability to perform basic work activities. [Id.]. In the past, Mitchell has also suffered from alcohol abuse in relation to his depression but has significantly reduced his consumption. [Id.].

Mitchell first filed for Supplemental Security Income (SSI) on February 6, 2019, alleging disability beginning on November 1, 2008, after falling on a jack while employed with U-Haul. [Dkt. 6-77 at 44].[1] Mitchell was determined "not disabled" by multiple doctors and disability adjudicators on July 11, 2019, and again on September 19, 2019, after reconsideration. [Dkt. 6-4 at 46, 59-60]. The ALJ issued another unfavorable decision on January 23, 2020, and the Appeals Council denied his request for review on August 10, 2020. [Dkt. 6-4 at 80, 88]. Mitchell then revised his onset date to January 2020. [Dkt. 6-78 at 5].

A total of three hearings were held in December 2020, April 2021, and September 2022 to resolve Mitchell's SSI matter. [Dkt. 7 at 7]. The December 2020 hearing was adjourned without testimony due to a procedural issue. [Id.]. In April 2021, ALJ Henry Hogan presided over a hearing of the merits and determined, in June 2021, that although Mitchell had not engaged in substantial gainful activity since January 24, 2020 and suffered from severe impairments regarding degenerative disc disease of the lumbar spine and depressive order, Mitchell's condition does not qualify as a disability as defined by the Social Security Act. [Dkt. 6-78 at 8-20]. Mitchell appealed, and on August 11, 2021, the Appeals Council denied the request for review. He appealed the Appeals Council's decision by filing a matter before this Court on October 8, 2021. See Mitchell v. Social Security Administration, No. 21-CV-11642 (D. Apr. 20, 2022). After reviewing the decision, this Court entered an order of voluntary

---

[1] Prior to this incident, Mitchell survived an automotive accident in which he was hit by a truck in 1996 causing partial blindness in his right eye. [Dkt. 6-77 at 56].

reversal and remand to the Commissioner of Social Security on April 20, 2022 for further review.

In accordance with the District Court's order, the ALJ was directed to consider additional evidence concerning Mitchell's impairments, if warranted to obtain, medical evidence from experts concerning the nature and severity of functional limitations, and supplemental evidence from a vocational expert, to clarify the effect of the assessed limitations. [Id]. Additionally, the ALJ was to further consider the medical source opinion(s) and prior administrative medical findings and claimant's maximal residual functional capacity. [Id.]. He was then required to provide appropriate rationale with specific references to evidence of record in support of the assessed limitations. [Id.].

A hearing was held on September 20, 2022 that included the telephonic testimony of Mitchell and vocational expert, Marian Marracco. [Id.]. Following the hearing, the ALJ issued an unfavorable decision on October 28, 2022. [Id. at 2]. Mitchell again filed for judicial review of the ALJ's decision before this Court on August 11, 2023. [Dkt. 1]. He seeks additional benefits due to his age and a reduction in residual capacity (sedentary), which the ALJ denied. The Court now reviews his motion to reverse the denial of his additional benefits, and the SSA's motion to affirm.

### A.     Mitchell's Testimony

At his most recent hearing on September 20, 2022, Mitchell testified about the physical and mental limitations he suffers due to his medical conditions. [Dkt. 6-77 at 43-57]. Mitchell was not working and had not worked since 2008. [Id. at 42]. Mitchell described the condition that bothered him the most, being his spinal back issues that affect his ability to walk due to his legs "buckl[ing]" when he stands. [Id. at 43-44]. He described not being able to walk

"correctly" and needing help to use the bathroom (assistance getting up off of the toilet). [Id. at 44]. In terms of his mobility, he claims to have trouble walking and would often need to put his hands on the wall to keep his balance. [Id. at 50]. The longest he can sit at one time without feeling pain is 20 minutes. [Id. at 49]. His back continues to worsen, especially due to the bouncing that occurs when he is taking the bus. [Id. at 44]. The pain is a constant occurrence and "on an average day" Mitchell does not leave the house because the pain is so severe. [Id. at 44-45]. He rated his average pain "past the ten thing" on a scale of 1 to 10, 10 being a pain so intense, he would need to visit the emergency room or urgent care. [Id. at 45]. Mitchell at one point reported difficulty with consistently taking the medications prescribed to him due to the side effects of drowsiness and tiredness that cause him to sleep all day, and that he's "sick of popping pills." [Id. at 45]. His medical records indicate however that he sought more prescriptions prior to his prescription refill date and the doctors refused his request. He later contradicts his statement about his medications causing him to sleep all day by claiming he only sleeps five hours a night due to his back pain. [Dkt. 6-77 at 46].

Mitchell claimed that he has previously attempted remedies, namely physical therapy, pain management injections, and laser surgery, all to no avail. [Dkts. 6-77 at 47; 6-12 at 56-57]. Medical records indicate, however, that Mitchell does not take his prescribed medications routinely, and engaged in physical therapy inconsistently. [Dkts. 6-73 at 54, 46-47, 49; 6-83 at 6]. He also refused to undergo back surgery—an option that provided a fifty (50%) percent chance of success and 50% chance he could completely lose his ability to walk completely. [Dkt. 6-77 at 47]. Mitchell testified that the maximum weight he would try to lift is ten pounds and that he had trouble holding his own grandchild. [Id. at 48, 52]. He also relies on his twin

sons to complete household chores like laundry. He is unable to cook because of his condition and usually eats microwave meals. [Id. at 52-53].

Mitchell also testified that depression is a major issue. He reported that even if he did not have any back pain, and was offered a full-time job, he would not be able to perform it due to his poor mental health. [Id. at 55]. Mitchell cites to his grandfather's and his fiancé's deaths in 2015 as having gravely impacted his mental health. [Dkts. 6-77 at 54; 6-70 at 4; 6-11 at 3]. He no longer enjoys basic activities such as watching TV or spending time with friends—albeit he also testified he routinely sees friends at the park. [Dkts. 6-77 at 49; 6-3 at 74]. He also struggles with authority and has a poor memory. [Dkt. 6-77 at 55-56]. Mitchell's medical records also indicate that he has engaged in self-mutilation by intentionally burning his arms to "get the stress and depression out of [his] head." [Dkt. 6-3 at 78].

### B.     Vocational Expert's Testimony

At the September 20, 2022 hearing, the vocational expert, Marian Marracco testified that a person of Mitchell's age, education and work experience, with light work limitations, would not be able to perform Mitchell's past relevant work, because it would exceed the light work limitations. [Dkt. 6-77 at 59-60]. Some alternative jobs he would be able to perform include a garment sorter, a marker (or price changer), and a dispatcher-router. [Id. at 60]. These three jobs would only require light exertional level and would be amenable to a change of position every hour. [Id.]. She noted however that an individual limited to a sedentary RFC could not perform the aforementioned jobs. [Id. at 60-61]. Marracco's opinion was based on skill level, and with the assumption that absenteeism (or Mitchell being absent from his position) once a month would be tolerated, but not after six to nine months. [Id. at 61, 62]. She also anticipated that at

Mitchell's skill level, the employer would tolerate Mitchell being off task 10% of the time. [Id. at 62].

### C. Relevant Medical Records and Evidence

The primary issues being reviewed at the recent hearing were Mitchell's lower back impairment and recent developments with his mental health. Mitchell was diagnosed with a disc desiccation in his lower back area at the L-4-L5 level with mild to moderate degenerative changes after an MRI in April 2014. [Dkt. 6-4 at 73]. Mitchell also had a disc bulge along the L-4-L-5 region of his back, with mild degenerative changes and mild to moderate spinal canal narrowing and crowding of the subarticular recess width impingement of the traversing L5 nerve roots. [Id.]. In 2019, Mitchell received radio frequency ablation (RFA) successfully that provided relief in his lower back, according to treating physician Dr. Perloff. [Dkt. 6-11 at 83]. Mitchell also met with primary care provider Xiu H. Yan in September 2019 who documented that Mitchell's lower back pain was stable and controlled. [Dkt. 6-70 at 66].

Another MRI was conducted in November of 2019, that indicated trace disc bulges between T11-T12, L1-L2, and L2-L3. [Dkt. 6-75 at 35-36]. Mitchell met with medical personnel in January 24, 2020, February 2020, May 2020, and January 2021, who all indicated Mitchell's condition was stable, well controlled, and that Mitchell reported his back pain was "not too bothersome" or regulated by physical therapy and medicine when the pain became more severe. [Dkts. 6-73 at 26-34; 6-74 at 14; 6-76 at 26; 6-77 at 21].

Concerning Mitchell's mental health, since the 2021 hearing, Mitchell's treatment for depression and anxiety was ongoing. He continued to have suicidal ideations, and occasionally engage in self-mutilation throughout October of 2019 through 2020. Notwithstanding the

infrequent episodes of more severe depression, Mitchell's treating physicians recorded that he had a generally stable condition.

No State Agency Consultant (the "Consultant") testified at the September 2022 hearing, however, the ALJ relied upon consultants' opinions that had previously reviewed Mitchell's record as late as September of 2019.  The Consultant initially concluded during the first review, as to Mitchell's physical impairments, that he could perform work at the light exertional level with occasional climbing of ladders, ropes, or scaffolds; occasional stooping; occasional crawling; frequent climbing of ramps and stairs; frequent balancing; frequent kneeling; and frequent crouching.  [Dkt. 6-4 at 44].  On reconsideration, the Consultant determined that Mitchell could perform work at the light exertional level, but should be afforded the opportunity to change position every hour for 5 minutes to relieve any pain associated with occasional climbing of ramps or stairs.  [Id. at 56].  However, Mitchell should refrain from climbing ladders, ropes, or scaffolds or crawling, and avoid stooping, frequent balancing, kneeling, and crouching.  [Id.].

Regarding Mitchell's mental impairments, upon the Consultant's initial review, the Consultant concluded that Mitchell's impairment was non-severe.  [Id. at 41].  The Consultant revised the conclusion on reconsideration, determining that Mitchell has mild cognitive limitations in understanding, remembering, or applying information.  [Dkts. 6-77 at 26; 6-69 at 41].  He also has mild limitations on interpersonal interactions and adapting or managing himself.  [Id.].  His limitations regarding concentration, persisting or maintaining pace are moderate.  [Id. at 57].  Notwithstanding these limitations, the Consultant concludes that Mitchell is likely able to carry out simple instructions in a normal workday.  [Id.].

## II.     LEGAL STANDARD

The Court's review of this appeal of denial of SSDI benefits is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citation omitted). The ALJ's factual findings must be conclusive if they are supported by "substantial evidence," and must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health & Hum. Servs., 647 F.2d 218, 222 (1st Cir. 1981). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (emphasis added) (citing Lizotte v. Sec'y of Health & Hum. Servs., 654 F.2d 127, 128 (1st Cir. 1981)). Substantial-evidence review "is more deferential than it might sound to the lay ear." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). Importantly, "it is the province of the ALJ, not the courts, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts of evidence." McGehee v. Berryhill, 386 F. Supp. 3d 80, 84 (D. Mass. 2019) (citing to Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991)). The circumstances for reversing an ALJ decision are limited to legal or factual errors made by the ALJ or an absence of "evidence rationally adequate . . . to justify the conclusion" reached by the ALJ. Roman-Roman v. Comm'r of Soc. Sec., 114 F. App'x 410, 411 (1st Cir. 2004); see also Manso-Pizarro v. Sec'y of Health & Hum. Servs., 76 F.3d 15, 16 (1st Cir. 1996). In other words, the question before this Court is

simply whether the "ALJ used the proper legal standards and found facts based on the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).

## III. DISCUSSION

On appeal, Mitchell argues that the ALJ erred in determining that Mitchell is not disabled under section 1614(a)(3)(A) of the Social Security Act. Specifically, he argues that the ALJ failed to follow the "mandate rule" because (1) the ALJ's physical RFC was not supported by substantial evidence or a "relevant" medical opinion; and (2) the ALJ should have found Mitchell to be disabled based on res judicata. The Order at issue, published July 26, 2022, stated the following:

> This action is hereby reversed and remanded to the Commissioner of Social Security for further administrative proceedings. Upon remand, the Appeals Council will direct the Administrative Law Judge to give further consideration to the evidence of record, including the opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 416.920c; *if necessary*, obtain supplemental medical and vocational expert testimony; *if necessary*, give further consideration to Plaintiff's residual functional capacity; and offer Plaintiff the opportunity for a hearing, take any further action necessary to complete the administrative record resolving the above issues, and issue a new decision.

Mitchell's overall claim is that the ALJ failed to "properly assess the opinion evidence, and prior administrative findings when formulating the RFC," thus failing to meet the requirements of the Order. To be clear, the only requirements set forth on remand are the following: (1) for the ALJ to consider the evidence and prior administrative findings; (2) offer opportunity for a hearing; and (3) issue a new decision. The ALJ accomplished those requirements and more. The Court briefly addresses the specific arguments below.

A.     ALJ's Findings

Following the September 2022 remand hearing, the ALJ determined that Mitchell was not disabled within the meaning of the Social Security Act.  [Dkt. 6-77 at 29].  The ALJ found that Mitchell was not engaged in substantial gainful activity and his disc disease of the lumbar spine and depressive disorder significantly limited his ability to perform work activities.  [Id. at 15].  However, he determined that Mitchell had residual functional capacity to perform light work when considering the combined effects of the severe and non-severe impairments.  [Id. at 15, 18.].  He found Mitchell's statements concerning the severity and persistence of the limiting effects of his impairments to be inconsistent with medical evidence.  [Id. at 20].  Mitchell's medical records indicate that his degenerative disc disease of the lumbar spine was managed by medication and physical therapy treatment.  [Id. at 20-21].  Mitchell visited medical personnel every one to three months between 2019 and 2022.  For most of these visits, he indicated the pain was manageable and his condition ranged between "not too bothersome" to doing well with no acute distress.  [Id.].

As for Mitchell's depressive disorder, the ALJ outlines Mitchell's long history of depression through 2019 to 2022.  During this time, Mitchell was taking his medications inconsistently and at times attended psychiatric appointments inconsistently.  [Dkt. 6-77 at 13].  However, he remained relatively stable between October 2019 and August of 2022.  Mitchell did have episodes of suicidal ideations and self-mutilation around the death of his father and fiancé, however his treating physicians generally reported stabilization and good emotional control.  [Dkt. 6-71 at 35-37].  The ALJ departed from the Consultant's opinion—albeit marginally—in concluding that Mitchell's limitations are greater than the Consultant assessed.  [Dkt. 6-77 at 26].  The ALJ found a moderate limitation for interacting with others; concentrating, persisting, or

maintaining pace; and adapting or managing himself, rather than a mild limitation, as the Consultant had found. [Id. ].  The ALJ concluded that Mitchell's residual functional capacity limits Mitchell to simple, routine, and repetitive tasks; occasional supervision; superficial, interpersonal interactions with the public; occasional interaction with coworkers involving no tandem tasks or teamwork; and occasional changes in the work setting.  [Id.].

### B.     The ALJ's Support for the Physical RFC Determination

Mitchell argues that the ALJ's physical RFC was not supported by substantial evidence or a "relevant" medical opinion.  Mitchell claims that the ALJ relied upon "stale" State Agency opinion evidence during this recent review.  "A medical opinion is not stale or unreliable merely because it predates other evidence in the record as long as the subsequent evidence does not undermine the opinion evidence." Carvalho v. Kijakazi, No. 20-CV-10240-DLC, 2021 WL 4488941, at *10 (D. Mass. Sept. 30, 2021).  An important factor is whether the record the reviewing consultant evaluated was "significantly incomplete." Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007).  The ALJ may afford substantial weight to "the opinions of non-treating medical examiners" if those examiners "had most, but not all, of the evidence for their review." Harding v. Colvin, No. CV 12-11437-DJC, 2015 WL 8082386, at *12 (D. Mass. Dec. 7, 2015) (quoting D.A. v. Colvin, No. 11-CV-40216-TSH, 2013 WL 5513952, at *8 (D. Mass. Sept. 30, 2013)).  Additionally, whether "the subsequently added medical evidence" establishes "any greater limitations" is a significant consideration.  See D.A. v. Colvin, No. 11-CV-40216-TSH, 2013 WL 5513952, at *8 (D. Mass. Sept. 30, 2013).

The ALJ relied on the opinions of the Consultants that had not seen the November 2019 MRI. [Dkts. 6-77 at 20; 7 at 13-14].  Dr. Palmeri, the medical consultant the ALJ credited more than the other opinions, reviewed Mitchell's record regarding Mitchell's lumbar impairment, and

the lumbar radio frequency ablation procedure he received in May of 2019. [Dkt. 7 at 13]. Mitchell argues that the ALJ "ignored" the 2019 MRI evidence in assessing the RFC, but also argues that the ALJ erred in interpreting the results of the 2019 MRI without utilizing a medical expert. [Id. at 15-16]. Both cannot be true. A more accurate depiction of the ALJ's review of the updated records is that he considered the October 2019 MRI, along with the attending physician's notes for Mitchell's frequent visits for the years following the 2019 MRI to 2021. Those records generally indicate that even after the 2019 MRI, Mitchell consistently reported that his pain was manageable with medication, barring a few instances, and his condition ranged between "not too bothersome" to doing well. There are no medical opinions assessing RFC that considered the medical records from the 2019 MRI and later. There did not have to be. See Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007) ("Although acceptable medical sources are the primary sources of evidence about the severity of impairment and its effect on work abilities, they are not the sole permissible sources of such evidence." (emphasis omitted)). Further, the ALJ accounted for the new medical evidence, including the 2019 MRI, by assessing greater limitations than those of the State Agency medical opinions. These circumstances do not call for an irreversible error. See Yearling v. Colvin, 292 F. Supp. 3d 515, 520 (D. Mass. 2017) (finding there was no reversible error in assigning a more restrictive RFC than would have been justified by the State Agency physicians).

In forming his conclusion, the ALJ acknowledged that he could not defer or give any "controlling" evidentiary weight to prior administrative medical findings or prior medical opinions. [Dkt. 6-77 at 25]. This removes any concern that improper weight was assigned to prior medical findings that did not have the complete record, albeit, the Court would not characterize the deficiency as significant. See Alcantara v. Astrue, 257 F. App'x 333, 334 (1st

Cir. 2007) (discussing that the consultant's opinion cannot serve as substantial evidence if it is based on a significantly incomplete record). Accordingly, this Court will not second-guess the weight the ALJ afforded to various evidence, because it is not its role to do so. See Quaglia v. Colvin, 52 F. Supp. 3d 323, 334 (D. Mass. 2014) (stating even where a different outcome is possible, courts cannot second-guess an ALJ decision that has adequate support).

Lastly, the Court rejects Mitchell's argument that the ALJ's decision lacks substantial evidence because there was no "super-evaluator, a single physician who gives the factfinder an overview of the entire case. . . ." Evangelista v. Sec'y of Health & Hum. Servs., 826 F.2d 136, 144 (1st Cir. 1987). The record contained more than just clinical data, but several observations, opinions, and findings of attending physicians in the years following the state medical consultants' reviews. To "lay down an ironclad rule" that without the opinion of this super-evaluator physician, renders a judge "powerless to piece together the relevant medical facts from the findings and opinions of multiple physicians." Id.

        **C.**     **The ALJ should have found Mitchell to be disabled based on res judicata.**

Mitchell argues that the ALJ should have found Mitchell disabled based on res judicata on the grounds of a Sixth Circuit decision in 1997. In Drummond v. Commissioner of Social Security, the court rejected the SSA's argument that it had "unfettered discretion to reexamine issues previously determined absent new and additional evidence." 126 F.3d 837, 842 (6th Cir. 1997). Courts within the First Circuit have declined to follow or has narrowed the Drummond holding, and the First Circuit has affirmed a magistrate's holding that "when a claimant files a new application covering a new timeframe" issues shall be reviewed de novo. Frost v. Barnhart, No. 03-215-P-H, 2004 WL 1529286, at *3 (D. Me. May 7, 2004), aff'd, 121 F. App'x 399 (1st Cir. 2005) ("when a claimant files a new application covering a new time frame,

the issues (including RFC) are to be examined de novo."); see also Cameron v. Berryhill, 356 F. Supp. 3d 186, 197 (D. Mass. 2019) (following the rationale that the new hearing officer's RFC must be supported by substantial evidence to stand); Ronald A. v. Berryhill, No. 2:17-CV-00368, 2019 WL 1372158, at *5 (D. Me. Mar. 24, 2019) (quoting Frost v. Barnhart, No. 03-215-P-H, 2004 WL 1529286, at *3 (D. Me. May 7, 2004)); Earley v. Comm'r of Soc. Sec., 893 F.3d 929, 932-35 (6th Cir. 2018) (holding that when an individual seeks disability benefits for a distinct period of time, each application is entitled to review, but "absent new and additional evidence, the first [hearing officer's] findings are a legitimate, albeit not binding, consideration").  The Court adopts this same approach here.

Mitchell adjusted and resubmitted his application to cover a new timeframe.  He also included new medical evidence, including the 2019 MRI and subsequent medical records from attending physicians.  These are both exceptions outlined in the aforementioned cases that allow for the merits of the same disability claim to be further adjudicated and considered by the ALJ.  Accordingly, there is no res judicata issue here.

**IV.      CONCLUSION**

For the foregoing reasons, Mitchell's Motion to Reverse the Decision of the Commissioner [Dkt. 7] is **DENIED** and the Commissioner's Motion to Affirm the Decision [Dkt. 11] is **GRANTED.**

**SO ORDERED.**

Dated: September 30, 2024                                             */s/* ANGEL KELLEY
                                                                      Hon. Angel Kelley
                                                                      United States District Judge